UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARLOS JIMENEZ COMBITA, et al.,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondent.

CASE NO. 2:26-cv-2584-BAT

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Immigration detainees Carlos Jimenez Combita and Angel Contreras Hernandez petition the Court under 28 U.S.C. § 2241 for an order (1) immediately releasing them from detention and restoring them to the same conditions as those in place prior to their re-detention; (2) enjoining their re-detention during the pendency of their removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that each Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks; (3) ordering upon release that Respondents return to Petitioners any personal property including personal identification documents (other than a passport) and employment authorization documents (EADs); (4) awarding attorney fees and costs; (4) granting such other and further relief as may be just and reasonable. Dkt. 1 (petition) at 6.

## BACKGROUND

### A. Carlos Jimenez Combita

Petitioner Carlos Jimenez Combita is a native and citizen of Colombia. Dkt. 6 (Decl. of Rita Soraghan ("Soraghan Decl."), ¶ 3. On May 7, 2023, he was encountered by the U.S. Customs and Border Protection ("CBP") near the Eagle Pass, Texas Port of Entry. *Id.* He was determined to have entered without inspection and lacking valid documents to enter the United States and was processed for expedited removal. *Id.*; Dkt. 7 (Decl. of Lawrence Van Daley ("Van Daley Decl."), Ex. 1 (Expedited Removal Order). Petitioner expressed a fear of return to Colombia and was referred to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview. USCIS determined that Petitioner had a positive credible fear and on May 31, 2023, issued a Notice to Appear charging him under 8 U.S.C. § 1182(a)(7)(A)(i)(I)[1] and § 1182(a)(6)(A)(i)[2]. Dkt. 6 (Soraghan Decl.), ¶ 4; Dkt. 7 (Van Daley Decl.), Ex. 2 (Notice to Appear).

Petitioner was subsequently released on an Order of Release on Recognizance ("OREC") on June 1, 2023, provided he comply with various conditions including not violating any local, state, or federal laws or ordinances. Dkt. 6 (Soraghan Decl.) ¶ 5; Dkt. 7 (Van Daley Decl.), Ex. 3 (OREC).

---

[1] 8 U.S.C. § 1182(a)(7)(A)(i)(I) provides:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission--
> (I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title…is inadmissible.

[2] 8 U.S.C. § 1182(a)(6)(A)(i) provides: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

After originally residing in Arizona, Petitioner filed the requisite paperwork with his ICE officer to relocate from Arizona to Alaska, and the ICE officer granted his request and instructed him to report to the Anchorage ICE Field Office when he arrived. *See* Dkt. 1-1 (Decl. of Carols Jimenez Combita ("Jimenez Combita Decl.")) ¶¶ 3–4. Petitioner promptly reported to the office in Anchorage, where he was fingerprinted, photographed, and instructed to attend any court hearings in Anchorage. *Id.* ¶ 4. Petitioner was not given any other reporting requirements. *Id.* Petitioner complied with the requirements of his removal hearings. *See id.* ¶ 5. He hired an immigration attorney, who helped him to timely file his application for asylum. *Id.* He also filed his application for employment authorization, which was granted in April or May of 2024. *Id.* ¶¶ 5–6. He also filed an application for Temporary Protected Status which was approved in 2024. *Id.* ¶ 5. Petitioner kept his address updated when he moved within Anchorage, he monitored his upcoming court dates and stayed in touch with his immigration attorney. *Id.*

Petitioner has no criminal convictions. *Id.* ¶ 8. In January 2024, he was stopped while driving and made to submit to alcohol testing, but the incident was expunged from his record. *Id.* 43. He was eventually joined by his wife and two children, aged five and eighteen, and lived with his family in a trailer home. *Id.* ¶ 9. He enrolled his children in school and worked at a cleaning company to support his family. *Id.* ¶¶ 6, 9. He developed new friendships and attended church. *Id.* ¶ 9. He volunteered in his community, bringing clothing and blankets to unhoused people in his area. *Id.*

Respondents submit Petitioner's Form I-213 dated May 19, 2026, which states that Petitioner came to the attention of ICE in May 2026, during an investigation of illegal hiring practices in Anchorage, Alaska. Dkt. 6 (Soraghan Decl.), ¶ 7; Dkt. 7 (Van Daley Decl.), Ex. 5 at 2 (Form I-213, dated May 19, 2026). Respondents submit the declaration of Deportation Officer

Rita Soraghan who states that "ICE became aware that Petitioner had submitted fraudulent lawful permanent resident and social security cards to gain employment in August of 2023." Dkt. 6 (Soraghan Decl.), ¶ 7. Respondents submit copies of USCIS Form I-9 Employment Eligibility Verification Department of Homeland Security on which the box for "lawful permanent resident" is checked and Petitioner's name is typed in the signature line with a date of August 18, 2013, as well as a Permanent Resident Card with Petitioner's name typed on it, and a Social Security card with Petitioner's name typed but no signature visible on the photocopied document. *Id.*; Dkt. 7 (Van Daley Decl.), Exs. 6 (Form I-9), 7 (LPR and social security card).

Officer Soraghan states that "[b]ased on Petitioner's criminal activity, it was determined that his OREC would be revoked" and on May 15, 2026, ICE issued a warrant to detain Petitioner. Dkt. 6 (Soraghan Decl.), ¶ 8; Dk. 7 (Van Daley Decl.), Ex. 8 (Warrant).

On May 19, 2026, ICE officers initiated a traffic stop and took Petitioner into custody. Dkt. 6 (Soraghan Decl.), ¶ 8; Dkt. 7 (Van Daley Decl.), Ex. 5 (Form I-213). Petitioner's Form I-213 dated May 19, 2026, states that that the "use of fraudulent identity and immigration documents reduces the likelihood of future encounters and raises the risk of flight from immigration encounters." Dkt. 7 (Van Daley Decl.), Ex. 5 at 3 (Form I-213). Petitioner was subsequently transferred to NWIPC in Tacoma. Dkt. 6 (Soraghan Decl.), ¶ 8.

Petitioner submits a declaration stating that he never signed any documents for his job, that he does not remember ever seeing an I-9 and that he always signed his name with his own handwriting and never submits any application with his typed name. Dkt. 10 at 2-3. Petitioner further states that he never applied for permanent residence and never told anyone he had permanent status. *Id.* He states he was always honest and told his employer he had no status to work and then updated them when he did receive his employment authorization. *Id.*

Petitioner is scheduled for a merits hearing on his applications for relief on August 19, 2026. Dkt. 6 (Soraghan Decl.), ¶ 9.

**B. Angel Contreras Hernandez**

Petitioner Angel Contreras Hernandez is a native and citizen of Venezuela. Dkt. 7 (Van Daley Decl.), Ex. 9 (Notice to Appear). On June 25, 2022, a Del Rio Sector Border Patrol agent encountered Petitioner near Eagle Pass, Texas, in Maverick County. *Id.* (Van Daley Decl.), Ex. 11 at 3 (Form I-213). After a brief interview, it was determined that he had unlawfully entered the United States from Mexico by swimming across the Rio Grande River. *Id.* Petitioner admitted to being a citizen and national of Venezuela with no legal right to be or remain in the United States. *Id.* He was arrested, advised of his rights, and transported to the Laredo Central Processing Center for further processing. *Id.* On June 28, 2022, Petitioner was served with a Notice to Appear charging him under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* (Van Daley Decl.), Ex. 9 (Notice to Appear). He was released on an OREC on June 29, 2022. *Id.* (Van Daley Decl.), Ex. 10 (OREC).

Petitioner was released from detention with a phone for submitting weekly photo check-ins and instructions to attend an ICE appointment in Nevada, where he planned to live. Dkt. 1-3 (Contreras Decl.) ¶ 3. He thereafter complied to the best of his ability and successfully sent the required photos each Monday morning for the first two weeks after his release. *Id.* ¶ 4. But on the third Monday, the ICE-provided phone stopped working and did not allow Petitioner to send his scheduled photo. *Id.* Because ICE had never provided instructions on what to do if the phone broke, Petitioner brought the phone to his first-scheduled appointment at the ICE office in Nevada and notified an officer of the issue during the visit. *Id.* The ICE officer informed Petitioner that such technical malfunctions were common and that there was no problem with his

compliance. *See id.* Petitioner returned the phone and was not provided with a new one. *Id.* After signing paperwork confirming his successful check-in, he was not scheduled for any future ICE check-ins or given any additional instructions or requirements. *Id.*

Petitioner subsequently attended his first master calendar hearing in November 2022, received another hearing date, and was instructed to notify the court of any address changes. *Id.* ¶ 5. He timely filed an asylum application, submitted evidence in support of his claim, attended his second master calendar hearing, and was scheduled for a merits hearing in 2027. *Id.* He began gathering more evidence and planned to find an attorney to represent him at his final court hearing. *Id.* In late 2023, Petitioner moved from his friend's home in Las Vegas to Mesquite, Nevada. *Id.* ¶ 7. He provided this new address to the immigration court within a week of his move. *Id.* Petitioner kept checking online in case his individual hearing date was changed and eventually received a mailed notice informing him that his individual hearing was rescheduled to 2029. *Id.* ¶ 6. Petitioner received his work permit in January 2024 and found work first as a delivery driver and eventually as a welder. *Id.* ¶ 8. He continued building a supportive network of friends, participating in basketball games at his community recreational center and exercising with a friend nearly every evening. *Id.* ¶ 13. 55. Petitioner has no criminal history. *Id.* ¶ 9.

In May 2026, Petitioner decided to move from Nevada to Oklahoma to pursue a work opportunity. *Id.* ¶ 10. None of the immigration officers he had previously met with had mentioned any restrictions on his travel. *Id.* On May 21, 2026, while driving through Utah, he was pulled over by police officers and asked for his license, insurance, and registration. *Id.* Petitioner gave all of the requested documents and consented to a search of his car. *Id.* Thereafter ICE officers arrived on the scene to question him. *Id.* Although Petitioner provided his work permit and social security card, an ICE officer placed him in handcuffs and booked him into a

local county jail. *Id.*

Once at the jail, Petitioner was not charged with any crimes. *Id.* ¶ 11. He submitted to additional questioning from an ICE officer, who told Petitioner only that he was being arrested because he lacked documents to remain legally in the United States. *Id.* Petitioner was detained and subsequently transferred to NWIPC. Dkt. 7 (Van Daley Decl.), Ex. 12 (Warrant).

## DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 8 U.S.C. § 2241(c).

### A. Detention under 8 U.S.C. § 1226 versus 8 U.S.C. § 1225

The Government argues Petitioner is detained under 8 U.S.C. § 1225(b) making detention mandatory. Dkt. 5.

Under 8 U.S.C. § 1226, the government has significant discretion with respect to noncitizens[3] who are "detained pending a decision on whether the [noncitizen] is to be removed from the United States." As long as the detained noncitizen does not meet the requirements for detention under § 1226(c), the Attorney General may release the noncitizen on "bond" or

[3] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

"conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Release is proper where the noncitizen "satisfies [the government] that he will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(a)(4).

If a noncitizen wishes to contest the initial custody determination — the denial or amount of bond, they have a statutory right to do so before an immigration judge. 8 C.F.R. § 1236.1(d)(1); *see Rodriguez v. LaRose*, No. 3:25-CV-02940-RBM-JLB, 2025 WL 3456475, at *4 (S.D. Cal. Dec. 2, 2025) (differentiating between mandatory detention under § 1225 and discretionary detention under § 1226).

Under 8 U.S.C. § 1225, there are two categories of "applicants for admission"— noncitizens who "arrive[ ] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). First, applicants who are covered by § 1225(b)(1) and second, applicants who are covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1), applies to, among others, noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" (with specific exceptions). *Id.* at 287-88 (citing §§1225(b)(2)(A), (B)).

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But, where a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer that noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). Thereafter,

if the asylum officer determines that the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112. But if the officer determines the noncitizen does not have a credible fear of persecution, the officer "shall order the [noncitizen] removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(III). The officer's decision may be appealed by the noncitizen to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." 8 U.S.C. § 1225(b)(1)(B)(iii)(I).

The Supreme Court in *Jennings* has held "1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider [ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." 583 U.S. at 299.

Applicants for admission are subject to mandatory detention and may only be released on parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287. The implementing regulations include another requirement for parole under 8 U.S.C. § 1182(d)(5)(A): the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). "Thus, if a noncitizen has been granted parole, it means that a [Department of Homeland Security] DHS official with authority determined that there were either 'urgent humanitarian reasons' or 'significant public benefit' justifying the parole of that individual, and that the individual did not pose a security or

flight risk." *Zavorin v. Wamsley*, No. 2:26-CV-00173-DGE, 2026 WL 309733, at *2 (W.D. Wash. Feb. 5, 2026).

**B. Carlos Jimenez Combita**

Respondents argue that Petitioner is detained under 8 U.S.C. § 1225(b) because he was placed in expedited removal proceedings on or about the time of his arrival in the United States and that "[o]n July 8, 2025, DHS issued a memorandum clarifying that aliens who meet the statutory definition of an 'applicant for admission' are subject to detention under 8 U.S.C. § 1225(b) and may not be released from ICE custody except pursuant to 8 U.S.C. § 1182(d)(5). *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1308 (W.D. Wash. 2025). DHS's prior practice of releasing certain applicants for admission on ORECs does not alter their underlying statutory classification as applicants for admission." Dkt. 5 at 4. But Respondents also acknowledge that "this Court has previously found noncitizens released on ORECs to be detained under 8 U.S.C. § 1226(a) rather than Section 1225(b)." *Id.*

In making the determination as to which detention statute applies to noncitizens apprehended at or about the time of arrival to the country, released, and later apprehended again, the government's treatment of the petitioner seeking habeas relief is "particularly relevant" and where a petitioner has been "'treated by Respondents as subject to detention under § 1226, rather than mandatory detention under § 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, 25-cv-02054-TMC, 2025 WL 3524932 at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025).

The record shows Petitioner was initially placed in expedited removal proceedings when he was first encountered by CBP in May 2023, but was found to have a credible fear, was subsequently issued a Notice to Appear, and was then released on an OREC which states "[y]ou

have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions…" Dkt. 7 (Van Daley Decl.), Ex. 2 (OREC).

Petitioner was subsequently re-detained based on the allegation that Petitioner had submitted fraudulent lawful permanent resident and social security cards to gain employment in August of 2023. The record shows the warrant issued for Petitioner's arrest on May 15, 2026, also cites to Section 236 of the Immigration and Nationality Act (8 U.S.C. § 1226). Dkt. 7 (Van Daley Decl.), Ex. 8 (Warrant).

The Court finds that the circumstances of this case, including Petitioner's release on an OREC and issuance of the arrest warrant citing to § 1226, reflect the Government treated Petitioner as subject to 8 U.S.C. § 1226(a) and that he was subject to that statute when he was re-detained. Release under an OREC is authorized under § 1226(a)(2)(B) and use of a warrant issued under § 1226(a) is further evidence of detention under § 1226(a). *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding noncitizen released on an OREC was detained and released under § 1226); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) ("Release on recognizance is not 'humanitarian' or 'public benefit' 'parole into the United States' under section 1182(d)(5)(A) but rather a form of 'conditional parole' from detention upon a charge of removability, authorized under section 1226."); *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 493 (E.D.N.Y. 2025) ("[T]he use of a warrant in March 2024 to arrest and detain Petitioner is further evidence that Petitioner could only be detained pursuant to § 1226(a)."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. Aug. 13, 2025) ("Respondents' own exhibits unequivocally establish that [the petitioner] was detained pursuant to Respondents' discretionary

authority under § 1226(a). The warrants for [the petitioner's] respective arrests in 2023 and 2025 explicitly authorized those arrests pursuant to 'section 236 of the Immigration and Nationality Act'—i.e., § 1226.").

Because Respondents have treated Petitioner as subject to § 1226(a), they cannot then simply re-detain Petitioner as mandatorily detained. *See Quinteros Moran v. Joyce*, No. 25 CIV. 9645 (GBD), 2025 WL 3632895, at *3 (S.D.N.Y. Dec. 15, 2025) (Finding petitioner detained under § 1226(a) where expedited removal proceedings were initially commenced but petitioner was subsequently released and "after years of the Government neglect[ing] any authority it may have possessed under § 1225(b) and consistently appl[ying] § 1226(a) …it cannot now turn back the clock, and neither can the Court.") (internal quotation and citation omitted).

Accordingly, the Court finds that when Petitioner was re-detained, he was subject to 8 U.S.C. § 1226(a).

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). And district courts have since applied the *Mathews* test in similar circumstances. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21 (W.D. Wash. 2025); *Zavorin*, 2026 WL 309733, at *2.

Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors" under *Mathews*: The private interest affected by the official action; the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

Regarding the first factor, the Court rejects the notion that Petitioner's weighty liberty interest is greatly diminished solely because he is a noncitizen in immigration proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action) *see also Zadvydas,* 533 U.S. at 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). And "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093, No. 2:25-cv-00647-DJC-DMC, (E.D. Cal. Mar. 3, 2025); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion

to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21. The first factor weighs in Petitioner's favor.

With respect to the second factor, Petitioner was released on an OREC for nearly three years during which time he submits evidence, which the Respondents do not dispute, that he updated his address with and checked in with ICE and the immigration court as required (including after he allegedly submitted fraudulent documents to his employer and even a month prior to his re-detention), complied with the requirements of his removal hearings, filed an application for asylum, applied for and received employment authorization, has no criminal convictions, built a life with his wife and two children, volunteered in his community, attended his local church, and worked pursuant to his employment authorization for most of his employment.

Respondents argue that Petitioner was properly re-detained without notice or a hearing because they obtained information Petitioner had used fraudulent documents to obtain employment. Dkt. 5 at 10. But Respondents do not assert Petitioner has been charged with, much less been convicted, of any crime related to these allegations or that he has any other prior criminal convictions or pending criminal charges. *See K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *5 (W.D. Wash. Apr. 9, 2026) (ordering release of a petitioner who had incurred a misdemeanor conviction on due process grounds). And courts in this district have routinely rejected the idea that "unlawful employment facilitated by the use of false Social Security numbers automatically weighs in favor of finding flight risk." *Lima Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. Apr. 10, 2026); *Alcaraz Garcia v. Hernandez*, No. 2:26-cv 01432-TLF, 2026 WL 1724216, at *6 (W.D. Wash. June 15, 2026) (holding the same rationale applies "even if petitioner did concede he used a false Social

Security number"); *Rodriguez Pineda v. Hernandez*, No. 2:26-cv-2367-MLP (W.D. Wash. Aug. 11, 2026) ("[C]ourts in this District have expressly rejected reliance on a noncitizen's use of a false Social Security number for work to support [a flight risk finding]."); *Loya Medina v. Hernandez*, No. 2:26-cv-00772-GJL, 2026 WL 1260848, at *7 (W.D. Wash. May 7, 2026) ("use of a false Social Security number for employment," coupled with prior unlawful entry and limited relief in removal proceedings, "were insufficient to establish that the noncitizen posed a flight risk or that no conditions of release could reasonably ensure future appearance"); *Garcia-Merino v. Hernandez*, No. 26-cv-1911-TMC, 2026 WL 2137819, at *1, *4 (W.D. Wash. July 24, 2026) (granting immediate release where "the IJ's inquiry focused on a single issue: whether the respondents possessed fraudulent social security documents").

Furthermore, Petitioner denies using fraudulent documents to obtain employment and, based on the record, there appears to be a significant question as to whether Petitioner proffered these documents or whether his employer did so on his behalf and without his knowledge. And, the record before the Court shows when Petitioner obtained employment authorization, he provided it to his employer and worked pursuant to that authorization for several years prior to his re-detention. Finally, as discussed above, Petitioner checked in and provided updates as required to immigration officials and the immigration courts of his address well after the time period he allegedly worked under the fraudulent documents and as recently as a month prior to his re-detention.

The Court finds that "the procedures used here—permitting ERO officers to make unilateral decisions about re-detention despite the absence of a criminal record—run a high risk of erroneous detention, and notice and a hearing before a neutral decisionmaker would have a high probability of reducing that risk." *Yao v. Mullin*, No. C26-1599-BAT, 2026 WL 1596276, at

*3 (W.D. Wash. June 4, 2026). The Court finds the second *Mathews* factor weighs in favor of Petitioner.

And lastly the Court finds the Government's interest in civil detention without a hearing is low. *See E.A. T.B*, 795 F.Supp.3d at 1323-24 (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.")).

The Court accordingly finds Petitioner has a protected liberty interest in his continuing release from custody and all of the *Mathews* factors weigh in his favor. The Court also finds while Petitioner may request a bond hearing, a post-deprivation bond hearing is an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty. *E.A. T.B*, 795 F.Supp.3d at 1323-24 (citing *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.")). Due process requires that, unless there are changed circumstances requiring mandatory detention, Petitioner must be provided with notice and a hearing before a neutral decisionmaker before he can be re-detained. *See Yao*, 2026 WL 1596276, at *3; *Pinchi v. Noem*, 792 F. Supp.3d. 1025, 1038 (N.D. Cal., July 24, 2025).

The Court accordingly finds Petitioner should be immediately released. *See E.A. T.B*, 795 F.Supp.3d at 1324.

**C. Angel Contreras Hernandez**

Respondents argue that Petitioner Angel Contreras Hernandez is also mandatorily detained under 8 U.S.C. § 1225(b).

The record shows Petitioner was issued a Notice to Appear shortly after he was encountered by CBP in June 2022 and then released on an OREC which states "[y]ou have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions…" Dkt. 7 (Van Daley Decl.), Ex. 10 (OREC).

Petitioner was subsequently re-detained when he was pulled over by local police for no apparent reason and detained based solely, it appears, on his immigration status, despite the fact that he had been previously released on an OREC. The record shows the warrant issued for Petitioner's arrest on May 25, 2026, also cites to Section 236 of the Immigration and Nationality Act (8 U.S.C. § 1226). Dkt. 7 (Van Daley Decl.), Ex. 12 (Warrant).

The Court finds that the circumstances of this case, including Petitioner's release on an OREC and issuance of the arrest warrant citing to § 1226, reflect the Government treated Petitioner as subject to 8 U.S.C. § 1226(a) and that he was subject to that statute when he was re-detained.

Applying the *Matthews* factors, having been released on an OREC and lived in the country, worked and established community ties over several years, Petitioner has a significant liberty interest. *See Doe*, 787 F. Supp. 3d at 1093; *Hernandez*, 872 F.3d at 981; *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21. The Court finds the first factor weighs in Petitioner's favor.

Furthermore, Petitioner was released on an OREC and Respondents submit no evidence the OREC was cancelled or that there were any grounds to cancel the OREC. Respondents do not argue, nor is there any evidence of record that Petitioner violated any conditions of his release. Nor is there any evidence Petitioner was convicted of or committed any criminal acts

after he came into the country, or absconded immigration supervision. Rather, the evidence of record shows Petitioner led a law abiding life and checked-in as required with immigration officials and the immigration courts. The Court finds the second *Mathews* factor weighs in favor of Petitioner.

And lastly the Court finds the Government's interest in civil detention without a hearing is low. *See E.A. T.B*, 795 F.Supp.3d at 1323-24 (citing *Ortega*, 415 F. Supp. 3d at 970 ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.")). The Court also finds while Petitioner may request a bond hearing, a post-deprivation bond hearing is an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty. *E.A. T.B*, 795 F.Supp.3d at 1323-24.

Due process requires that, unless there are changed circumstances requiring mandatory detention, Petitioner must be provided with notice and a hearing before a neutral decisionmaker before he can be re-detained. *See Yao*, 2026 WL 1596276, at *3; *Pinchi*, 792 F. Supp.3d. at 1038.

The Court accordingly finds Petitioner should be immediately released. *See E.A. T.B*, 795 F.Supp.3d at 1324.

**D. Permanent Injunction**

Petitioners ask that the Court permanently enjoin their re-detention during their removal proceedings absent written notice and a hearing prior to re-detention at which Respondents must prove by clear and convincing evidence that each petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks. Dkt. 1 at 20-21.

A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Petitioners have unquestionably suffered irreparable injury by being detained for months in violation of due process. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Ortiz v. Hermosillo*, No. 2:26-CV-00384-TL, 2026 WL 607672, at *6 (W.D. Wash. Mar. 4, 2026) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). And monetary damages would be inadequate to compensate for a threatened future loss of liberty, as much as for the present loss of liberty. Finally, Petitioners have demonstrated the final two factors (which merge when the government is the opposing party) are satisfied: there is no disservice to the public and no undue hardship created by requiring the government to adhere to constitutional procedures, and the cost of a pre-deprivation hearing is outweighed by the substantial liberty interests at stake.

Respondents argue the relief requested is overbroad and that the appropriate remedy is a prompt custody redetermination hearing under the ordinary procedures of 8 U.S.C. § 1226(a) and 8 C.F.R. §§ 1003.19 and 1236.1 where the burden of proof is on the Petitioner. Dkt. 5 at 11. The Court rejects Respondents' position. As in *Lima Gamez*, "Respondents have given no indication that they intend to stop indiscriminately re-detaining previously released persons without prior notice and opportunity to be heard," notwithstanding the voluminous caselaw in this District and other jurisdictions repeatedly declaring such arrests unlawful. 2026 WL 1382362, at *7; *cf. Ortiz*,

2026 WL 607672, at *5 (criticizing Respondents for continuing to engage in re-detentions without notice or an opportunity to be heard, despite district caselaw requiring otherwise). Petitioners face the threat of re-detention without due process, and such relief is warranted on the record. *See Lima Gamez*, 2026 WL 1382362, at *7; *Pascual Pablo v. Hernandez*, 2:26-cv-02504-BAT (W.D. Wash., Aug. 6, 2026).

The Court concludes the *eBay* factors are satisfied, and a permanent injunction is warranted. Respondents are prohibited from re-detaining Petitioners without adequate notice of intent to re-detain them and the grounds for re-detention, as well as a pre-deprivation hearing before a neutral decisionmaker. Given the violation of Petitioners' due process rights and the risk of erroneous deprivation of liberty, at any pre-deprivation hearing, Respondents shall bear the burden to prove by clear and convincing evidence that Petitioners are a flight risk or a danger to the community and that no conditions other than their detention would be sufficient to prevent such harms. *See Pinchi,* 792 F. Supp. 3d at 1038 (holding Petitioner may not be detained unless the government demonstrates at a bond hearing, by clear and convincing evidence, she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms.). However, this prohibition does not apply to mandatory detention under 8 U.S.C. § 1226(c).

## CONCLUSION

1. The petition for writ of habeas corpus (Dkt. 1) is **GRANTED**.

2. Respondents shall **RELEASE** both Petitioners within **24 HOURS** of entry of this order and restore them to the same conditions as those in place prior to Petitioners' re-detention, unless Respondents choose to impose less restrictive conditions; return to them any personal property upon release, including personal identification documents (other than a passport) and

employment authorization documents; and file a status report certifying they have been released within **48 HOURS** of entry of this order.

3. Respondents are **PROHIBITED** from re-detaining Petitioners without adequate notice of intent to re-detain them and the grounds for re-detention, as well as a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that each Petitioner is a flight risk or danger to the community and that no conditions other than their detention would be sufficient to prevent such harms. This prohibition does not apply to mandatory detention under 8 U.S.C. § 1226(c).

4. Petitioners may file a motion for an award of fees and expenses under the Equal Access to Justice Act within the time required by statute.

DATED this 18th day of August, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge